EDWARD BURNS ET AL. *v.* GLEASON PLANT
SECURITY, INC., ET AL.
(5076)

BORDEN, SPALLONE and BIELUCH, Js.

Submitted on briefs February 2—decision released April 14, 1987

*Alfred P. Forino* filed a brief for the appellants (plaintiffs).

*Paul M. Clyons* filed a brief for the appellees (named defendant et al.).

BORDEN, J. The dispositive issue in this case is whether the plaintiffs can maintain a cause of action in negligence against the defendants, a security company and its employee, where the employee left a key in the ignition of a company car which was subsequently stolen by a third party, who drove it to the plaintiff's

store and, in the course of committing an armed robbery, assaulted the named plaintiff.[1] The trial court held that the plaintiff could not. We find no error.

The facts fairly provable under the relevant counts of the complaint[2] are as follows. The named defendant, Gleason Plant Security, Inc. (Gleason), was engaged in the business of providing security guard and patrol services and was employed in this capacity by Ethan Allen Headquarters and Carriage House in Danbury. Gleason employed the defendant, Cornelia Coons, as a road supervisor. While acting in that capacity, Coons parked her vehicle, a company owned car, in the parking lot of Ethan Allen Headquarters at about 6:10 p.m. on a November evening. The parking lot was in close proximity to a neighborhood with a high incidence of crime. Additionally, within the past twenty-four months, in the parking lot, there had been numerous instances of theft of motor vehicles, larceny from motor vehicles, robbery and threatening with a gun. Coons departed from the car, leaving it unattended and unlocked, with the keys in the ignition. Thereafter, Charles E. Thompson and Anthony Wayne Moore stole the car and drove it to the Airport Spirit Shoppe. At about 7:30 p.m., in the course of committing an armed robbery at the store, Thompson and Moore assaulted the plaintiff by shooting him.

The plaintiff sued Gleason and Coons on the theory that Coons was negligent in failing to remove the key from the vehicle, and in leaving it unattended and unlocked in an area where there was a high crime rate

---

[1] The named plaintiff's wife, Janet Burns, sought damages for loss of consortium. As used in this opinion, plaintiff refers to the named plaintiff only.

[2] The first and third counts of the complaint are directed against the security company and its employee, respectively. The second and fourth counts of the complaint were directed against the plaintiff's assailants. The plaintiff withdrew the latter counts.

and, consequently, a risk that it would be stolen. The plaintiff claimed that Gleason was negligent in failing to require that its employee remove the keys from the ignition of an unattended car, and failing to supervise its employee adequately.

Gleason and Coons moved to strike the first and third counts of the complaint, asserting that they failed to state claims upon which relief could be granted. The court, *J. Healey, J.,* granted the defendants' motion to strike. Judgment was later rendered on these counts by the court, *Moraghan, J.* The plaintiff appealed from this judgment.

A motion to strike challenges the legal sufficiency of a pleading. " 'In reviewing the granting of a motion to strike, we take the facts alleged in the complaint and construe them in a manner most favorable to the pleader.' *Progressive Casualty Ins. Co.* v. *DiGangi,* 4 Conn. App. 137, 140, 492 A.2d 548 (1985). This includes the facts necessarily implied and fairly provable under the allegations. Id., 140–41. It does not include, however, the legal conclusions or opinions stated in the complaint. *Fairfield Lease Corporation* v. *Romano's Auto Service,* 4 Conn. App. 495, 497, 495 A.2d 286 (1985)." *Tomczuk* v. *American Mutual Ins. Co.,* 9 Conn. App. 194, 196, 517 A.2d 1053 (1986).

We assume arguendo that the complaint sufficiently alleges that the defendants were negligent in leaving the keys in the unlocked car. See, e.g., *Anderson* v. *Gengras Motors, Inc.,* 141 Conn. 688, 691, 109 A.2d 502 (1954); *Alberone* v. *King,* 26 Conn. Sup. 98, 213 A.2d 534 (1965); W. Prosser, Torts (4th Ed.) § 33, p. 176. It is clear, moreover, that the complaint sufficiently alleges that the defendant's negligence was a cause in fact, or "but for" cause, of the plaintiff's injuries. We conclude, however, that the defendants' negligence could not have been the *proximate cause* of the plain-

tiff's injuries, because the conduct of Thompson and Moore was, as a matter of law, a superseding cause of the plaintiff's injuries.

"The terms 'intervening cause' and 'superseding cause' have been used interchangeably. See, e.g., *Corey* v. *Phillips,* 126 Conn. 246, 253–56, 10 A.2d 370 (1939). The Restatement of Torts makes clear that the doctrine is properly referred to as 'superseding cause,' and that it embodies within it the concept of an 'intervening force.' 2 Restatement (Second), Torts §§ 440 through 453.

"The function of the doctrine of superseding cause is not to serve as an independent basis of liability, regardless of the conduct of a third party whose negligent conduct may have contributed to the plaintiff's loss. The function of the doctrine is to define the circumstances under which responsibility may be shifted entirely from the shoulders of one person, who is determined to be negligent, to the shoulders of another person, who may also be determined to be negligent, or to some other force. 'A superseding cause is an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about.' Id., § 440.

"If the third person's [conduct] is determined to be a superseding cause of the plaintiff's injury, that [conduct], rather than the negligence of the party attempting to invoke the doctrine of superseding cause, is said to be the sole proximate cause of the injury. *Virelli* v. *Benhattie, Inc.,* 146 Conn. 203, 209, 148 A.2d 760 (1959); see also *Miranti* v. *Brookside Shopping Center, Inc.,* 159 Conn. 24, 29, 266 A.2d 370 (1969); *Corey* v. *Phillips,* supra, 254–56. The doctrine serves as a dividing line between two closely related factual situations: where two forces combine to cause the plaintiff's inju-

ries; and where one force intervenes in such a way as to relieve a negligent defendant from liability. See generally 2 Restatement (Second), Torts §§ 440 through 453. Thus, the doctrine of superseding cause serves as a device by which one admittedly negligent party can, by identifying another's superseding conduct, exonerate himself from liability by shifting the causation element entirely elsewhere.

"The circumstances under which this shifting may take place have been well-defined in our case law. Even if a plaintiff's injuries are in fact caused by a defendant's negligence, a superseding cause may break that causal connection if it 'so entirely supersedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in any degree, produces the injury; *or it must be the non-concurring culpable act of a human being who is legally responsible for such act.*' *Corey* v. *Phillips,* supra, 255. ' "If a defendant's negligence was a substantial factor in producing the plaintiff's injuries, the defendant would not be relieved from liability for those injuries even though another force concurred to produce them." *Miranti* v. *Brookside Shopping Center, Inc.,* supra, 29. And, where the negligence of the actor creates the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, *except where the harm is intentionally caused by a third person and is not within the scope of the risk created by the actor's conduct.* Restatement (Second), 2 Torts § 442 B . . . .' *Merhi* v. *Becker,* 164 Conn. 516, 522, 325 A.2d 270 (1973); *Tetro* v. *Stratford,* 189 Conn. 601, 605, 458 A.2d 5 (1983)." (Footnote omitted; emphasis added.) *D'Arcy* v. *Shugrue,* 5 Conn. App. 12, 24–26, 496 A.2d 967, cert. denied, 197 Conn. 817, 499 A.2d 56 (1985).

The comments to the Restatement further provide: "The rule stated in this Section [442 B] does not apply where the harm of which the risk has been created or increased by the actor's conduct is brought about by the intervening act of a third person which is intentionally tortious or criminal, and is not within the scope of the risk created by the original negligence. Such tortious or criminal acts may in themselves be foreseeable, and so within the scope of the created risk, in which case the actor may still be liable for the harm, under the rules stated in §§ 448 and 449. But if they are not, the actor is relieved of responsibility by the intervention of the third person. The reason usually given by the courts is that in such a case the third person has deliberately assumed control of the situation, and all responsibility for the consequences of his act is shifted to him." 2 Restatement (Second), Torts § 442 B, comment c, p. 471. The question to be resolved, therefore, is whether the criminal conduct of Thompson and Moore was a reasonably foreseeable consequence of the defendants' negligence. We do not believe that it was.

It is true that the question of proximate cause is ordinarily a question of fact for the trier. *Tetro* v. *Stratford,* supra, 605. "The test is whether the harm which occurred was of the same general nature as the forseeable risk created by the defendant's negligence." *Mehri* v. *Becker,* supra, 521. It becomes a question of law, however, " 'when the mind of a fair and reasonable man could reach only one conclusion . . . .' " *Trzcinski* v. *Richey,* 190 Conn. 285, 295, 460 A.2d 1269 (1983). Such a determination "requires us to decide where a line should be drawn. As Justice Holmes said, 'the great body of the law consists in drawing such lines . . . .' *Schlesinger* v. *Wisconsin,* 270 U.S. 230, 241, 46 S. Ct. 260, 70 L. Ed. 557 (1926) (*Holmes, J.,* dissenting)." *Urrata* v. *Izzillo,* 1 Conn. App. 17, 19, 467 A.2d 943 (1983).

When Coons left the keys in the unlocked car in a high crime area, it may well have been a foreseeable risk that the car would be stolen by a third party and negligently operated so as to cause harm to an innocent party. See, e.g., *Mehri* v. *Baker,* supra, 522. It was not also foreseeable, however, that a third party would steal the car, drive elsewhere, leave the car, enter a store, commit an armed robbery, and assault an innocent person in the course of that robbery. To hold otherwise would be to convert the imperfect vision of reasonable foreseeability into the perfect vision of hindsight.

There is no error.

In this opinion the other judges concurred.